[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The instant proceeding is drawn in five (5) counts wherein the plaintiff, Joyce Storms, as parent and natural guardian of her minor son, Russell, and Russell, individually, claim injuries when the minor plaintiff was struck by a vehicle while crossing a street within a marked crosswalk. The first count is brought against Donald Wolfe ("Wolfe"), as the operator of the pickup truck which struck Russell. CT Page 2803 The plaintiffs allege that Wolfe was negligent when he forcibly struck the minor plaintiff while he was crossing South Street within a marked crosswalk. Counts two through five are brought against the Board of Education of the City of Danbury ("Board"), the City of Danbury ("Danbury"), and Eileen Mitchell, Julia Horne and on Nelson Macedo, respectively, (hereinafter "defendants").
In count two the plaintiffs allege that Russell was using the crosswalk in order to attend a regularly scheduled activity at the South Street School, i.e., a basketball practice in which his older brother was a participant. They continue by asserting that the Board knew, or in the exercise of reasonable care should have known, that students who participate and/or spectate at after school activities regularly cross South Street in the area where the minor plaintiff was struck. The plaintiffs allege that although the Board deployed school crossing guards during the day so that students could cross South Street, the Board provided no crossing guards at the time the minor plaintiff was injured, even though the Board knew or should have known that students would be crossing South Street in order to attend the practice.
In the same count, they recite that the crossing area constituted a nuisance in that it had a natural tendency to be used by members of the public in an area where there were no traffic lights or crossing guards. They further allege that using the crosswalk without crossing guards was a continuing danger and an unreasonable use of the school grounds and facilities. The plaintiffs finally allege that the Board contributed to the nuisance by committing positive acts, some of which included the positive encouragement by the Board to participate in school activities, which invite the use of the crosswalk as a means of arriving at the school even though crossing guards were not present.
Count three incorporates the nuisance allegations as contained in count two. In it, the plaintiff also claims that Mitchell, employed by the Board as a teacher and basketball coach, encouraged student members to attend activities at the school grounds, and further encouraged those members to use a route which took them across South Street, even though she had reason to know that crossing guards were not provided. Mitchell, while acting in the course of her employment, was negligent, inter alia, by failing to notify any authority, students, or spectators of the dangers of crossing in the area where the minor plaintiff was injured at a time when no crossing guards were deployed. It is directed at Horne as well as Mitchell and asserts that Horne, the principal of South Street School, was negligent in that, inter alia, she failed to warn of the dangerous crossing situation or failed to promulgate policies which CT Page 2804 would provide for the safe crossing of South Street.
Count four incorporates the entire third count and further declares that Danbury, as owners of the property, knew or should have known that members of the public regularly cross South Street to attend after school activities. Danbury maintained or contributed to a nuisance by committing positive acts, some of which included creating a condition dangerous to school children by locating the school on South Street, and, at the same time, failing to provide or take steps to provide safe access to the school, which include the installation of traffic lights or the deployment of crossing guards.
Count five reiterates the entire fourth count and further alleges that Macedo, in his role as Chief of Police, has the responsibility of supervising the safety of the citizenry of Danbury. Macedo knew or should have known that minors would cross South Street in order to reach the South Street School, and that the crossing area constituted a nuisance, and that Macedo maintained or contributed to that nuisance by committing positive acts, some of which included conditioning students to use the South Street crosswalk, while, at the same time, failing to provide a method of safe crossing, which includes the installation of traffic lights or the deployment of crossing guards.
On August 12, 1993, the defendants filed an answer. By way of three special defenses, the defendants allege that: (1) the minor plaintiff's injuries are due to his own negligence; (2) the plaintiffs' action is barred by the doctrine of governmental immunity; and (3) the plaintiffs' action is barred by the operation of the Recreational Use Act. Section52-577(g) of the General Statutes. The several defendants have filed a motion for summary judgment.
A motion for summary judgment shall be granted "`if the pleadings, affidavits, and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.'" Connell v. Colwell, 214 Conn. 242, 246, quoting Zichichi v. Middlesex Memorial Hospital, 204 Conn. 399, 402. A material fact is simply a fact which will make a difference in the result of the case. Genco v. Connecticut Light Power Co., 7 Conn. App. 164,167. The burden of proof is on the moving party. The facts presented must be viewed in the light most favorable to the party opposing the motion. State v. Goggin, 208 Conn. 606, 616. "To satisfy his burden the movant must make a showing that it is quite clear what the truth is, and that excludes any real doubt as to the existence of any genuine issue of material fact." Fogarty v. Rashaw, 193 Conn. 442,445, citing therein Dougherty v. Graham, 161 Conn. 248, 250. Issue CT Page 2805 finding, rather than issue determination, is the key to the procedure. Yanow v. Teal Industries, Inc., 178 Conn. 262, 269.
The defendants in their assault on count two argue in their memorandum of law that Danbury, pursuant to its own policy, decided to deploy crossing guards up until the time immediately after normal school hours, but required parental permission for after school activities. Therefore, the defendants argue that Danbury cannot be held liable due to governmental immunity stemming from a discretionary act.
The defendants, in speaking to counts three and five, postulate that municipal employees undertaking discretionary governmental acts may only be subject to suit (1) if their conduct involves malice, wantonness, or intent to injure; (2) if a statute specifically provides a cause of action; (3) or a failure to act would be likely to subject an identifiable person to imminent harm. The plaintiffs say the defendants have failed to allege any of the three exceptions. They conclude their argument by claiming that the three municipal employees cannot be liable based on the operation of Sec. 52-577 of the General Statutes.
Finally, the defendants argue, citing Burns v. Board of Education,30 Conn. App. 594, that the three municipal employees cannot be liable because their duties did not include the personal inspection of the area where the accident allegedly occurred. They have provided the affidavits of Horne, Mitchell and Macedo, who all state that their duties do not include the personal inspection of the crosswalk area located in front of the school. In speaking to count four, they note that since count four is derivative of count three that it should also fail, and that Danbury is not liable based on the doctrine of governmental immunity and by the operation of Sec. 52-557.
"Although municipalities enjoy some limited governmental immunity from liability, they have no sovereign immunity and may therefore sue and be sued. . . . (Citations omitted.) Giannitti v. Stamford,25 Conn. App. 67, 79. "Municipalities do, in certain circumstances, have a governmental immunity from liability." Murphy v. Ives, 151 Conn. 259,264. In Gordon v. Bridgeport Housing Authority, 208 Conn. 161, the court reaffirmed its adherence to the public duty doctrine, citing Shore v. Stonington, 187 Conn. 147, for the proposition that:
 "`[I]f the duty which the official authority imposes upon an officer is a duty to the public, a failure to perform it, or an inadequate or erroneous performance, must be a public and not an individual injury, and must be redressed if at all in some form of public prosecution. On the other hand, if the duty is a CT Page 2806 duty to the individual, then a neglect to perform it or to perform it properly, is an individual wrong, and may support an individual action for damages.'"
(Citations omitted.) Gordon v. Bridgeport Housing Authority, supra, 166. "`[T]he public duty doctrine provides the starting point of the analysis' with regard to the question of municipal liability." Roman v. Stamford, 16 Conn. App. 213, 219, aff'd, 211 Conn. 396, citing Gordon v. Bridgeport Housing Authority, supra. The court then determined whether or not there is a public or private duty, which involves a question of law. In the application of the public duty doctrine, the problem is always to determine whether the action involved does create a duty to the individual. It appears that the test is this: If the duty imposed upon the public official is of such a nature that the performance of it will affect an individual in a manner different in kind from the way it affects the public at large, the action is one which imposes upon the official a duty to the individual, and if the official is negligent in the performance of that duty he is liable to the individual. Once it is determined that the duty involved in the present case is a public duty, the issue of municipal liability may also turn upon whether the specific act in issue was ministerial or discretionary. Roman v. Stamford, supra, 221. "A `ministerial' act, as opposed to a `discretionary' act, `refers to [one] which is to be performed in a prescribed manner without the exercise of judgment or discretion." (Citation omitted.) Id. "Municipal liability for the breach of a public duty attaches `only if the act complained of is a ministerial act or [if] one of the narrow exceptions to discretionary acts . . . applies.' Gordon v. Bridgeport Housing Authority, supra, 170."
 The . . . three exceptions or circumstances under which liability may attach even though the act was discretionary: first, where the circumstances make it apparent to the public officer that his or her failure to act would be likely to subject an identifiable person to imminent harm; . . . second, where a statute specifically provides for a cause of action against a municipality or municipal official for failure to enforce certain laws; . . . and third, where the alleged acts involve malice, wantonness or intent to injure, rather than negligence.
Evon v. Andrews, 211 Conn. 501, 505.
In this proceeding, the plaintiffs allege that at the time the minor plaintiff was injured, there was no crossing guard posted, even though the defendants knew, or should have known that students such as the minor CT Page 2807 plaintiff would use the crosswalk in order to attend an after school activity. The duty of deploying crossing guards at various times during school days is a duty which is owed to the public. As the duty is a public duty, the issue becomes whether the acts alleged are governmental or discretionary acts, in which case the defendants cannot be liable, or ministerial acts, wherein the defendants could be liable. "Whether the acts complained of . . . were governmental or ministerial is a factual question which depends on the nature of the act complained of." Gauvin v. New Haven, 187 Conn. 180, 186.
In Burns v. Board of Education, supra, the plaintiffs, in the fourth count of their complaint, set forth that the defendant superintendent of schools was negligent in failing to salt and sand a courtyard where the minor plaintiff fell, sustaining injuries. The defendant in Burns submitted an affidavit, filed in conjunction with a motion for summary judgment, stating that his duties as superintendent did not include inspecting the school grounds or verifying that icy conditions had been corrected. In addition, the court in Burns had at its disposal the testimony of the head custodian who stated that the decision of whether to salt and sand the school premises was his, and not the superintendent's. The court in Burns also considered Sec. 10-157(a) of the General Statutes which addresses the general responsibilities of the superintendent, and does not include a duty to verify that the school premises were salted and sanded. The court in Burns concluded that the "trial court properly determined that the doctrine of governmental immunity applied" and that summary judgment was proper. Id., 601.
In the present case, the defendants have attached to their motion the affidavits of Horne, Mitchell and Macedo, who all deny having the duties of personally inspecting the crosswalk or directing the students across the street. However, in direct contrast to Burns, supra, the defendants have provided no authority or evidence addressing who has the duty of deployment of school crossing guards. This failure serves to frame a genuine issue of fact and the motion for summary judgment based on the doctrine of governmental immunity cannot be sustained. It is also significant that since a municipality may be held liable pursuant to Sec. 7-465 of the General Statutes[1] if a municipal employee becomes obligated to pay sums by reason of the liability imposed on the employee by law for physical damages to person or property; Burns v. Board of Education, supra, 601; the defendants' motion for summary judgment directed against Danbury should also fail.
Section 52-557g of the General Statutes provides, in part:
(a) Except as provided in section 52-557h, an owner of land who CT Page 2808 makes all or any part of the land available to the public without charge, rent, fee or other commercial service for recreational purposes owes no duty of care to keep the land, or the part thereof so made available, safe for entry or use by others for recreational purposes, or to give any warning of a dangerous condition, use, structure or activity on the land to persons entering for recreational purposes.
A municipality's immunity under the recreational use statute extends to its employees. See Manning v. Barenz, 24 Conn. App. 592. However, it remains axiomatic that a motion for summary judgment shall be granted "`if the pleadings, affidavits, and any other proof submitted show that there is no genuine issue as to any material fact. . .'"; Connell v. Colwell, supra, 246; and that the burden of proof is on the moving party. State v. Goggin, supra, 616. The defendants have failed to show by affidavits or other documentation that the owner of the land, in this case, the municipality, made all or any part of that land available to the public without charge for recreational purposes. The defendants' motion for summary judgment on behalf of the municipal employees based on the operation of Sec. 52-557g of the General Statutes is also denied.
Moraghan, J.